# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARCINE H.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) No. 22 C 730 |
| v. | ) |
| | ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) Maria Valdez |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Marcine H.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 14] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 25, 2019, Plaintiff filed a claim for DIB, alleging disability since February 28, 2019. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on January 26, 2021, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On April 15, 2021, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 28, 2019. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine with cervical radiculopathy; right shoulder tendinitis and degenerative joint disease of the right

2

AC joint; right carpal tunnel syndrome; degenerative changes of the right carpal-metacarpal joint; right hip bursitis; right knee replacement; and obesity. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: can occasionally climb or stoop; can frequently kneel, crouch, and crawl; can have occasional concentrated exposure to hazards such as dangerous moving machinery or unprotected heights; and can perform frequent handling and fingering with the right, dominant upper extremity. At step four, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a receptionist. Accordingly, the ALJ found that Plaintiff is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does

3

the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of

4

'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir.

5

2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ erred in evaluating the opinion evidence; (2) the ALJ's physical RFC assessment lacked evidentiary support; and (3) the ALJ erred in evaluating Plaintiff's symptoms. Each argument will be addressed below in turn.

#### A. The ALJ's Assessment of Dr. Bruce Montella's Opinions

For her first argument, Plaintiff contends that the ALJ improperly discounted the opinions of Dr. Bruce Montella, her treating orthopedist. Because Plaintiff filed her claim in 2019, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

6

Case: 1:22-cv-00730 Document #: 22 Filed: 03/24/23 Page 7 of 15 PageID #:1018

opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

In this case, the ALJ considered Dr. Montella's August 2020 medical source statement. (R. 41.) The ALJ noted Dr. Montella's opinion "that the claimant would constantly have interference with concentration due to her symptomatology and . . . her symptoms would render her unable to maintain competitive employment." (*Id.*) The ALJ discounted that opinion as unsupported, finding that there was "no evidence of [Plaintiff] requiring medical treatment by a mental health professional." (*Id.*) The ALJ further noted that Dr. Montella "estimated absences of four or more

7

times per month" and opined that Plaintiff "could lift 0 pounds, sit for less than two hours in an 8-hour workday and stand/walk less than two hours total in an 8-hour workday" and also could perform "no firm or fine grasping with either hand." (*Id.*) The ALJ discounted those opinions because Dr. Montella's "treatment notes and exams do not support such severe limitations" and the "extreme" limitations were not supported by "the objective medical record nor the testimony." (*Id.* at 41-42.)

In light of the ALJ's explicit rationales, the Court finds that the ALJ sufficiently expounded upon supportability and consistency in discounting Dr. Montella's opinions, and, further, was permitted to reject Dr. Montella's opinions as extreme. *See* 20 C.F.R. § 404.1520c(b)(2); *Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 729 (N.D. Ill. 2020) (with respect to doctors' extreme opinions "the court cannot take either doctor's opinion seriously, let alone begin to question the ALJ's rejection of them"). The ALJ also rightfully rejected Dr. Montella's opinions that Plaintiff was "disabled" and under "permanent and total disability" (R. 41-42), as an ultimate determination of disability is a matter reserved for the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (claimant's ability to work is question reserved, by regulation, for the Commissioner); *Jill A.W. v. Kijakazi*, No. 20 C 3854, 2022 WL 225879, at *5 (N.D. Ill. Jan. 26, 2022) ("[T]he ALJ was not obligated to justify rejecting Drs. Puri's and Brander's statements that Jill was unable to perform part-time work beyond noting that it is a conclusion reserved to the Commissioner."). The Court declines Plaintiff's general invitation to reweigh the evidence in relation to Dr. Montella's opinions, which is forbidden. *See Gedatus v.*

8

*Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Accordingly, Plaintiff's first argument is unavailing.

### B.    The ALJ's Physical RFC Assessment

In advancing her second argument, Plaintiff contends, *inter alia*, that the ALJ did not properly consider her manipulative limitations. Pertinent to that argument, the ALJ noted in her decision that Plaintiff "claims to have right hand pain due to deformity of the fingers and degenerative joints." (R. 34.) However, the ALJ noted that Plaintiff "testified to having no issues using buttons/zippers," that Dr. Montella "noted nothing in regards to [Plaintiff's] hands in 2019," and that Plaintiff "exhibited normal hand grasp during the consultative exam." (*Id.* at 35.) Though the non-examining state agency consultants and the consultative examiner concluded that Plaintiff had no manipulative limitations, the ALJ ultimately determined that the "updated medical records support some manipulative limitations." (*Id.* at 40.) Pertinent to that determination, the ALJ provided the following analysis:

> During the independent consultative exam in February 2020, there was no deformity, swelling, or atrophy noted throughout the extremities, and her handgrip strength was normal. Yet, the March 2020 x-rays of the right hand showed severe degenerative changes at the thumb/carpal metacarpal joint, with decreased joint space and osteophytes. Her EMG study revealed moderate subacute right C5-6 radiculopathy as well as moderate right carpal tunnel syndrome. This is inconsistent with the DDS finding that there were no manipulative limitations present. It is also acknowledged that Dr. Sheryl L. Lipnick, DO opined in March 2020 that "although she does have EMG findings of moderate carpal tunnel syndrome, I believe she is asymptomatic from this and would not recommend any definitive surgical treatment at this time." Overall, the undersigned finds she can perform frequent handling and fingering with the right upper extremity.

9

(R. 40 (citations omitted).)

Given the ALJ's fulsome analysis of Plaintiff's hand conditions, Plaintiff is simply incorrect in asserting that "the ALJ failed to explain how she determined that [Plaintiff] could frequently handle and finger with her right upper extremity." (Pl.'s Br. at 9.) Furthermore, the Court rejects Plaintiff's suggestion that the ALJ impermissibly "played doctor" in relation to the limitation to frequent handling and fingering, as the ALJ was not erroneously "playing doctor" by considering and weighing the evidence bearing upon Plaintiff's manipulative limitations. *See Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886-87 (N.D. Ill. 2003) ("Our review of the record indicates that the ALJ was not 'playing doctor,' but performing his duty to consider and weigh the evidence."). Accordingly, the Court finds Plaintiff's arguments concerning her asserted manipulative limitations to be unavailing.

As part of her second argument, Plaintiff also contends that the ALJ did not properly consider her obesity. However, the ALJ expressly "acknowledge[d] that the claimant's obesity affects her overall health" and "considered this in formulating the appropriate RFC." (R. 40.) According to Plaintiff, "the ALJ's discussion regarding [Plaintiff's] obesity was perfunctory and insufficient." (Pl.'s Br. at 10.) The problem for Plaintiff is that she does not specifically explain, beyond generalizations, how her obesity impacts her other alleged physical impairments. That is a problem because a claimant's challenge to the ALJ's assessment of her obesity fails where the claimant "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ." *Shumaker v. Colvin*,

10

632 F. App'x 861, 867 (7th Cir. 2015). The claimant must "explain how her obesity exacerbated her underlying impairments." *Id.* Here, Plaintiff fails to cite to any evidence in the record and does not sufficiently explain how her obesity exacerbated her other impairments. Under the circumstances, the Court finds Plaintiff's arguments concerning obesity to be unavailing. *See Tanitria C. v. Saul*, No. 19 CV 1884, 2021 WL 1577795, at *9 (N.D. Ill. Apr. 22, 2021) ("Given that the ALJ expressly considered Claimant's obesity in connection with her other impairments and complaints, Claimant's argument that the ALJ failed to properly account for her obesity lacks merit. Notably, other than general speculations that morbid obesity can, of course, interact with other impairments to limit physical functions, Claimant has failed to cite to any record evidence showing how her obesity specifically limits her ability to perform work related activities to a greater degree than the ALJ recognized.").

### C. The ALJ's Subjective Symptom Evaluation

For her third argument, Plaintiff contends that the ALJ improperly discounted her subjective symptom allegations. In her decision, the ALJ noted Plaintiff's reports that she is "unable to work due to diabetes, arthritis, high blood pressure, cholesterol, anxiety, depression, spondyloses, scoliosis, and bursitis of the right hip." (R. 33-34). The ALJ then summarized Plaintiff's testimony and allegations at length. (*Id.* at 34.) The ALJ ultimately assessed Plaintiff's subjective symptoms as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the

11

> evidence does not support the claimant being as limited as alleged. For example, the claimant alleged having wrist pain, hand pain and hand swelling so severe that she cannot use a pair of scissors, open a bottle of water, or lift an object weighing even five pounds, but the record does not support this. Dr. Montella noted nothing in regards to the hands in 2019. In addition, the claimant exhibited normal hand grasp during the consultative exam. Further, she testified to having no issues using buttons/zippers. Moreover, the claimant testified that she feels able to lift/carry 5 pounds, but said she does not carry grocery bags. Yet, the treatment records or consultative exams do not note such limitation. The claimant testified that she feels able to stand for 20-30 minutes, walk one block in the springtime but that she needs to sit down when going anywhere. The claimant said that she had to sit when shopping with her husband at the store recently. She feels able to sit in a lounging position with head resting back for 45 minutes but is only able to sit in a regular chair for 15 to 20 minutes because her shoulder and neck hurt. Yet, the treatment records or consultative exam does not note such limitations. In essence, the claimant says that she cannot work due to being unable to sit or stand for long periods. Yet, the record does not show that she has limits sitting or standing. Further, she had no difficulty with moving about the room, heel walk, toe walk, or tandem gait during the 2020 consultative exam. Squatting and arising were performed without difficulty. There was no deformity, swelling, or atrophy noted throughout the extremities, including her hands. Even more, the treating source treatment notes do not support her being so limited and the undersigned discussed them below and incorporated herein by reference for efficiency purposes.

(R. 35-36 (citations omitted).)

This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Under that standard, the Court finds that, per the ALJ's explanation and support quoted above, the ALJ reasonably determined that Plaintiff's allegations were not fully corroborated. *See Prill v. Kijakazi*, No. 21-1381, 2022 U.S. App. LEXIS 1072, at *23 (7th Cir. Jan. 13, 2022)

("Substantial evidence supports the ALJ's determination that Prill's account of her subjective symptoms was not consistent with her medical records."); *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms.").

As for Plaintiff's more specific arguments, the Court disagrees that the ALJ failed to properly evaluate Plaintiff's allegations of pain. The ALJ addressed Plaintiff's pain symptoms throughout her decision and the ALJ's symptom analysis quoted above encompasses Plaintiff's pain allegations. Plaintiff also contends that the ALJ's "decision contained no real discussion of [Plaintiff's] activities of daily living." (Pl.'s Br. at 13.) However, the ALJ noted that "[i]n her function report, [Plaintiff] reported that she takes care of the dog, pays bills, uses a checkbook, handles household chores, drives, cooks and shops." (R. 30.) The ALJ further noted that Plaintiff's daily activities vary and that she reported some difficulty with driving, chores, taking a bath, and taking medications. The Court disagrees with Plaintiff that the ALJ failed to properly evaluate Plaintiff's daily activities, as the

13

ALJ specifically addressed Plaintiff's daily activities and, again, the ALJ's symptom analysis quoted above encompasses Plaintiff's alleged difficulties with daily activities. Plaintiff further contends that the ALJ improperly commented upon Plaintiff's conservative treatment. However, it is not error for an ALJ to note that an individual with allegedly extreme limitations in her functioning did not require more aggressive interventions to manage her condition. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) ("[T]he ALJ did not err in considering that Prill received conservative treatment."); *Lisa G. v. Kijakazi*, No. 21-CV-3732, 2022 WL 4272782, at *4 (N.D. Ill. Sept. 15, 2022) ("[T]he ALJ adequately explained her rationale behind limiting Plaintiff to light work with additional limitations. It was not error for the ALJ to have considered Plaintiff's conservative course of treatment when coming to this conclusion."). Finally, in passing, Plaintiff argues that the ALJ failed to properly consider Plaintiff's long work history. However, Plaintiff concedes that "an ALJ is not statutorily required to consider a claimant's work history." (Pl.'s Br. at 15.) And, as Defendant points out, Plaintiff's work history, however good, does not translate into functional limitations that the ALJ missed. Ultimately, none of Plaintiff's arguments establish that the ALJ's symptom evaluation was "patently wrong," as was Plaintiff's burden to show. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 14] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

**SO ORDERED.**   **ENTERED:**

**DATE:** **March 24, 2023**   _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**